UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY YOUNG,

                Petitioner,                Case No. 1:13-cv-958

v.                                   Honorable Robert J. Jonker

CARMEN PALMER,

                Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Following a jury trial in the Berrien County Circuit Court, on April 27, 2011, Petitioner Anthony Young was convicted of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a).  On June 6, 2011, Petitioner was sentenced as a second-offense felony offender, MICH. COMP. LAWS § 769.10, to three concurrent terms of imprisonment of 25 years, a mandatory minimum under MICH. COMP. LAWS § 750.520b(2)(b), to 75 years.

In his *pro se* petition, Petitioner raises four grounds for relief, the same grounds he raised in the Michigan Court of Appeals and Michigan Supreme Court on his direct appeal:

    I.      THE TRIAL COURT DENIED PETITIONER A FAIR TRIAL BY ADMITTING THE COMPLAINANT'S HEARSAY STATEMENTS UNDER THE EXCEPTION ALLOWING STATEMENTS MADE FOR MEDICAL TREATMENT IN VIOLATION OF U.S. CONST AM XIV.

    II.     THE PROSECUTOR DENIED PETITIONER A FAIR TRIAL BY STATING FACTS NOT IN EVIDENCE THAT CONSTITUTED INADMISSIBLE HEARSAY AND BY USING THE COMPLAINANT'S HEARSAY STATEMENTS TO IMPROPERLY BOLSTER HER

CREDIBILITY;  COUNSEL  WAS  INEFFECTIVE  IN  FAILING  TO OBJECT.  US CONST AMS VI & XIV.

III.    THE  PROSECUTOR  DENIED  PETITIONER  A  FAIR  TRIAL  BY IMPROPERLY  APPEALING  TO  THE  SYMPATHY  OF  THE  JURY; COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT.  US CONST AMS VI & XIV.

IV.    PETITIONER'S   25-YEAR   MINIMUM   SENTENCE   IS DISPROPORTIONATE AND CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.  US CONST VIII; CONST 1963, art. 1, § 16.

(Br. in Supp. of Habeas Pet., ECF No. 2, PageID.23, 30, 42, 51.)  On April 21, 2014, Respondent filed an answer to the petition (ECF No. 9), stating that the grounds should be denied because they are noncognizable and/or without merit.  On April 21, 2014, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF No. 10.)[1]  Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are meritless.  Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

**Procedural and Factual Background**

Petitioner was charged with three counts of sexual penetration (digital/vaginal, penile/vaginal, and digital/anal) of his twelve-year-old daughter (the Complainant) based on incidents that occurred on two different nights during November of 2010.  The Complainant described the incidents in some detail at trial.  Petitioner took the stand and denied that the events

---

[1]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| | |
|---|---|
| February 18, 2011 Hearing | (Hr'g Tr., ECF No. 11-2, PageID.__) |
| April 26, 2011 Trial Transcript (Volume 1) | (Trial Tr. I, ECF No. 11-3, PageID.__) |
| April 27, 2011 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 11-4, PageID.__) |
| June 6, 2011 Sentencing Transcript | (Sentencing Tr., ECF No. 11-5, PageID.__). |

described by the Complainant ever occurred.  Only four other witnesses testified: Charlotte Davis, Petitioner's former girlfriend, testified regarding the events surrounding the Complainant's disclosure of the incidents; Nurse Teresa Spitler, a sexual assault nurse examiner, testified regarding her examination of the Complainant following the disclosure; Brooke Rospierski, a social worker from the Berrien Child Assessment Center, testified regarding forensic interviewing and the behavior of sexually abused children; and Detective Brian Smit testified regarding his search of the home where the incidents occurred.

The jury deliberated for four and one-half hours before returning their verdict that Petitioner was guilty of three counts of first-degree criminal sexual conduct.  The trial court sentenced Petitioner as detailed above.

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals.  In an unpublished opinion issued July 26, 2012, the court of appeals denied all appellate grounds and affirmed the convictions.  *People v. Young*, No. 306681, 2012 WL 3055257 (Mich. Ct. App. July 26, 2012).  The Michigan Supreme Court denied leave to appeal on December 26, 2012.  Petitioner filed his habeas application on or about August 28, 2013.[2]

---

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his application on August 28, 2013, and it was received by the Court on August 30, 2013.  Thus, it must have been handed to prison officials for mailing at some time between those dates.  For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

**Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**Discussion**

I.       Hearsay testimony from the nurse (habeas issue I)

Registered Nurse Teresa Spitler, a trained sexual assault nurse examiner, testifed regarding her examination of the Complainant.  (Trial Tr. II, ECF No. 11-4, PageID.535-568.)  As part of her testimony, Nurse Spitler read into the record her notes reflecting the statement Complainant made to her describing the history of the sexual assaults.  (*Id.*, PageID.543-546.)  Petitioner contends that the admission of such hearsay evidence violated his constitutional rights.

The Michigan Court of Appeals rejected Petitioner's claim.  As a matter of state law, the court of appeals concluded that the evidence was admissible under Michigan Rule of Evidence 803(4) as a statement made for the purposes of obtaining medical treatment.  *Young*, 2012 WL 3055257, at *1.  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76)).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.

Whether or not the statement was admissible as a matter of state law, Petitioner claims that the admission of the Complainant's out-of-court statements violated his constitutional rights.  To prevail, Petitioner must show that the admission of this evidence rises to the level of a due process violation because it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental.  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh*

*v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  Further, this Court may not grant relief unless

Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision

reached by the Supreme Court on a question of law or that the state court decided the evidentiary

issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders*

*v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.

Petitioner refers generally to his Fourteenth Amendment due process rights in

describing the fundamental principles that have been offended by the admission of the

Complainant's out-of-court statements.  The flaw in Petitioner's argument is that there is no

"Supreme Court holding granting relief on his due process theory: that the admission of allegedly

unreliable hearsay testimony violates the Due Process Clause." *Desai v. Booker*, 732 F.3d 628, 630

(6th Cir. 2013).  Thus he cannot show that the state court's decision regarding the evidence "'was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States.'" *Id.* (citing 28 U.S.C. § 2254(d)).

Perhaps for that reason, the Michigan Court of Appeals looked beyond the Fourteenth

Amendment to the Sixth Amendment Confrontation Clause in evaluating Petitioner's challenge:

> The Confrontation Clause of the Sixth Amendment "bars 'admission of testimonial
> statements of a witness who did not appear at trial unless he was unavailable to
> testify, and the defendant had had a prior opportunity for cross-examination.'" [*Davis
> v. Washington*, 547 U.S. 813, 821 (2006)], quoting *Crawford v. Washington*, 541 U.S.
> 36, 53–54 (2004). Because the complainant testified at trial and was subject to
> cross-examination, it does not matter whether her statement to Spitler was
> testimonial or not . . . .

*Young*, 2012 WL 3055257, at *2.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to

be confronted with the witnesses against him." U.S. CONST., Am. VI.  The Supreme Court has long

read this right as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557 (1988) (citing *Mattox v. United States*, 156 U.S. 237, 242-43 (1895) and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)).  As stated by the Court:

> Our own decisions seem to have recognized at an early date that it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:
>
> > "The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242-43 (1895).
>
> Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

*California v. Green*, 399 U.S. 149, 157-58 (1970).

Because the Complainant testified at trial and was subject to cross-examination, the admission of her out-of-court statement did not violate the Confrontation Clause.  Petitioner therefore has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.  Moreover, Petitioner has failed to show that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, Petitioner's habeas challenge to the admission of the Complainant's out-of-court statements has no merit.

II.      Prosecutorial misconduct in closing arguments (habeas issues II and III)

Petitioner contends that the prosecutor's misconduct in closing arguments rendered

the trial unfair.  Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy*

*v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes

available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial.  *Serra*

*v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993).  The habeas court must

consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the

petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate

or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view

any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See Angel*

*v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc).  "When a petitioner makes a claim of

prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not

the culpability of the prosecutor.'"  *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209,

219 (1982)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."

*Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512

(6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have

substantial breathing room when considering prosecutorial misconduct claims because

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'"  *Slagle*

*v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645

(1974)).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas

petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155

(2012) (internal quotation omitted).

A.      Facts not in evidence

Petitioner contends that the prosecutor improperly referenced evidence that had never

been admitted when he made his closing arguments.  Petitioner objects specifically to the following

argument by the prosecutor:

> [Complainant's] testimony was never contradicted. It was never contradicted by the
> defendant's attorney.  When she was up there testifying about a specific act, well,
> isn't it true it happened this particular day, isn't it true that he did something else.
> She was consistent.  She was consistent in her testimony here, her testimony at the
> hospital.  (Inaudible)  testimony from the CAC [Children's Assessment Center].
> (Inaudible) got up there and say--contradicted any one particular way.  She was
> always very specific, very time oriented, very pain oriented. Very act oriented and
> specific.

(Trial Tr. II, ECF No. 11-4, PageID.640.)   Petitioner claims that the prosecutor was making

representations regarding the content of Complainant's out-of-court statement to Ms. Rospierski, the

forensic examiner from the Children's Assessment Center.  Such representations would have fallen

outside of the permissible scope of testimony permitted by the trial court.

The trial court limited Ms. Rospierski's testimony as follows:

> [Ms. Rospierski] is not allowed to testify as to specific -- I guess opinion as to
> whether or not she conducted an interview with [the Complainant], which I think
> we're leading up to.  She cannot, in other words, testify as to whether or she made
> a determination of whether or not she was or wasn't being truthful, but she can within
> her -- the general characteristics of children that are -- that may have been sexually
> abused, and there are certain characteristics which she's already talked about.

(Trial Tr. II, ECF No. 11-4, PageID.597.)  Thus, the prosecutor was permitted to elicit testimony

from Ms. Rospierski that she interviewed the Complainant, when and where the interview took

place, the Complainant's demeanor, that she followed the eight phase forensic interviewing protocol

that she had previously described, that the Complainant made a disclosure, and that the disclosure

described specific time frames. (*Id*., PageID.598-600.) Defense counsel, in turn, elicited testimony

from Ms. Rospierski that the Complainant was rather chatty during the interview. (*Id*., PageID.603.)

Ms. Rospierski never testified, however, as to the specific content of the Complainant's statement

nor did she testify regarding her opinion as to the truthfulness of the disclosure.[3]

Petitioner's challenge is premised on a particular reading of the prosecutor's

argument. Petitioner insists that the prosecutor asked the jury to note the consistency among the

Complainant's various statements regarding the sexual assaults: the Complainant's testimony on

the witness stand, her statement to the sexual assault nurse adviser, and her statement to the CAC

forensic examiner. Thus, Petitioner argues, the prosecutor was informing the jury that the content

of the statement to the CAC forensic examiner was the same as the Complainant's other statements.

Because the content of the statement to the CAC forensic examiner was not admitted, Petitioner

claims that the prosecutor's reference was improper.

The Michigan Court of Appeals interpreted the prosecutor's statement differently:

> Defendant submits that the prosecutor improperly bolstered the complainant's
> credibility in his closing argument by arguing that her testimony was consistent with
> her statements to Spitler and to forensic examiner Brooke Rospierski of the

---

[3]The trial court reinforced the limited scope of Ms. Rospierski's testimony in the final instructions for the jury:

> You have heard Brooke Rospierski's opinion about the behavior of sexually abused children. You
> should consider that evidence only for the limited purpose of deciding whether [the Complainant's]
> acts and words after the alleged crime were consistent with those of sexually abused children. That
> evidence cannot be used to show that the crime charged here was committed or that that the defendant
> committed it. Nor can it be considered an opinion by Brooke Rospierski that [the Complainant] is
> telling the truth.

(*Id*., PageID.664.)

Children's Assessment Center (CAC).  Claims of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v. Bahoda*, 531 N.W.2d 659 (1995).  Rospierski testified at trial that the complainant's demeanor and the period of time between the assault and the complainant's disclosure were not out of the ordinary, but did not relate the substance of the complainant's statement to her. At closing arguments, the prosecutor stated "[The complainant] was consistent. She was consistent in her testimony here, her testimony at the hospital. (Inaudible) testimony from the CAC."

Defendant argues that by describing the complainant's testimony as "consistent" with the testimony from Rospierski, the prosecution was informing the jury that the substance of the complainant's non-admitted statement to Rospierski was the same as the complainant's testimony at trial.  However, the prosecutor never referred to that statement and it is far from clear that the prosecutor was even implying such a claim.  The statement was made in the context of a general discussion of the complainant's credibility including her performance on cross examination, the specificity of her recollection of the assaults, and other factors.  A more reasonable reading of the prosecutor's statement would take it to mean only that Rospierski's testimony in no way contradicted or cast doubt on the complainant's truthfulness.

*Young*, 2012 Wl 3055257, at *2 (parallel citation omitted).  The standard the court of appeals used to gauge the propriety of the prosecutor's conduct was not contrary to the clearly established federal law referenced above, nor was it an unreasonable application of that standard.  As the Michigan Court of Appeals determined the facts, there was no reference to facts not in evidence and no prosecutorial misconduct.  Petitioner has failed to demonstrate that the court of appeals' determination of the facts was unreasonable on this record.  Accordingly, his habeas claim has no merit.

### B.     Bolstering

Petitioner argues that the prosecutor, in making his argument regarding the CAC interview, also engaged in improper "vouching" for his witness.  The Sixth Circuit has generally recognized two types of objectionable vouching.  *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170

F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).[4]  The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).  In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

Petitioner makes no claim regarding the first type of vouching (lending prestige). Petitioner relies entirely on the second type of vouching—bolstering—because petitioner claims the prosecutor's argument referenced facts not in evidence.  Because the prosecutor did not reference facts not in evidence, however, he did not "bolster" either.  Petitioner's argument regarding impermissible vouching has no merit.

C.      Prosecutorial appeal to the juror's sympathy

The Michigan Court of Appeals described and resolved Petitioner's sympathy challenge as follows:

---

[4]Notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328 29 (citing *Johnson v. Bell*, 525 F.2d 466, 482 (6th Cir. 2008)), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct.  Given the Supreme Court's recent admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation. *See, e.g., Lopez v, Smith*, 135 S. Ct. 1, 3 (2014) (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshal v. Rodgers*, 133 S. Ct. 1446, 1450 (2013); *White v. Woodall,* 134 S. Ct. 1697, 1703 (2014) (same, respecting a claim regarding the privilege against self-incrimination); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.").

Defendant next argues that the prosecutor committed misconduct by improperly appealing to the jury's sympathy for the complainant during closing arguments. "It is improper for the prosecutor to appeal to the jury to sympathize with the victim." *People v. Dalessandro*, 419 N.W.2d 609, 615 (1988). During closing arguments, the prosecutor stated:

> And how do you determine credibility? Well, first of all, you watched her very intently when she testified. And I know you felt her pain when she gave you very specific incidents of what happened to her. You felt her pain by the expressions on her face. You felt the pain in her eyes when she told you what her dad did to her. You felt the pain through her tears describing those despicable acts.

> You want more physical evidence? There's nothing more physical than pain. Very, very descriptive. When these acts were performed on her, not only what he used, how he used it, what he did, but each act had a specific pain. Let's start with the pain she was sexually assaulted when the defendant placed his finger into her anus. No twelve year old is going to know what that pain feels like . . . . No one can describe that pain unless you've, again, had it done to you.

Defendant argues that these statements distracted the jury from the issue to be decided and led it to convict defendant because of the nature of the offense and their sympathy for the complainant.

However, it is clear from the record that the prosecutor did not ask the jury [to] put itself in the complainant's shoes, but rather was explaining why the jury should find the complainant to be a credible witness. The thrust of the prosecution's argument was that the jury could tell that the complainant had actually suffered the assaults alleged by her behavior on the stand, and the accuracy of her description of pain that she would not otherwise be familiar with. The prosecutor began with the rhetorical question, "And how do you determine credibility?" and the rest of the language objected to by defendant was the prosecutor's answer to that question. "It is well-established that the prosecutor may comment upon the testimony and draw inferences from it and may argue that a witness . . . is not worthy of belief." *People v. Buckey*, 378 N.W.2d 432, 438-39 (1985). "Moreover, a prosecutor may use emotional language during closing argument and such argument is an important weapon in counsel's forensic arsenal." *People v. Ackerman*, 669 N.W.2d 818, 830 (2003) (citation and internal quotations omitted).

This line of argument was not improper.

*Young*, 2012 WL 3055257, at \*3-4 (parallel citations omitted). The court of appeals' factual determinations regarding the nature of the prosecutor's argument are patently reasonable on this record. Petitioner has failed to show that the court of appeals' determination is contrary to or an unreasonable application of any clearly established federal law. Indeed, he cannot.

The prosecutor's references to the Complainant's testimony regarding pain were not so inflammatory as to constitute a denial of due process. The cases in which the Sixth Circuit has found prejudicial misconduct have involved much more egregious and pervasive attempts to evoke sympathy. For example, in *United States v. Payne*, 2 F.3d 706, 711-15 (6th Cir. 1993), the Court of Appeals reversed a federal conviction because of the prosecutor's repeated references to Christmas time, poor pregnant women, and employee layoffs, finding that the prosecutor's statements were part of a "calculated effort to evoke strong sympathetic emotions" for victims and against the defendants. Similarly, in *Martin v. Parker*, 11 F.3d 613 (6th Cir. 1993), the Court of Appeals condemned the prosecutor's repeated references to the defendant as a "Hitler," a "dictator," a "disturbed individual," and "one of the most obnoxious witnesses you'll ever hear." *Martin*, 11 F.3d at 616; *accord United States v. Steinkoetter*, 633 F.2d 719, 720-21 (6th Cir. 1980) (prosecutor's comparisons of defendant to Pontius Pilate and Judas Iscariot require reversal).

By contrast, the prosecutor's remarks in the present case were not directed toward the petitioner and were not inflammatory. The references to pain were all made in the context of discussing the credibility of the Complainant and were not designed to inflame the jury. Finally, as the Sixth Circuit has observed, it is impossible to expect that a criminal trial will be conducted without some showing of feeling. "'The stakes are high, and the participants are inevitably charged with emotion.'" *Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir. 1990) (quoting *United States v.*

*Wexler*, 79 F.2d 526, 529-530 (2d Cir. 1935).  Given the circumstances, the prosecutor's comments

did not infect the trial with unfairness so as to make the resulting convictions a denial of due process.

III.     Disproportionate 25-year mandatory minimum sentence

Petitioner argued in the state courts that his mandatory minimum 25-year sentences

were disproportionate to his offenses.   Petitioner principally argued that his sentence was

disproportionate under state law. (Br. in Supp. Of Pet., ECF No. 2, PageID.53-55.)  However, in his

brief before the Michigan appellate courts, Petitioner also argued that the sentence violated the

Eighth Amendment.

To the extent Petitioner argues that his sentence was disproportionate under state law,

he fails to raise a cognizable habeas claim.  As previously discussed, a federal court may grant

habeas relief solely on the basis of federal law and has no power to intervene on the basis of a

perceived error of state law.  *Bradshaw*, 546 U.S.at 76; *Pulley*, 465 U.S. at 41.  Moreover, the

Michigan courts have rejected the claim that the 25-year mandatory minimum sentence under MICH.

COMP. LAWS § 750.520b(2)(b) is cruel or unusual under state law.  *See People v. Benton*, 817

N.W.2d 599, 607-09 (Mich. Ct. App. 2011).

With respect to Petitioner's Eighth Amendment claim, the United States Constitution

does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*,

501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently,

only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209

F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle

applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle

applies only in "'the rare case in which a threshold comparison of the crime committed and the

sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

## IV. Ineffective assistance of counsel

Petitioner complains that his trial counsel rendered ineffective assistance in failing to raise the prosecutorial misconduct claims discussed above. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding

that counsel's strategic decisions were hard to attack).  The court must determine whether, in light

of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions

were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not

entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court

reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of

*Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles*

*v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen*

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those

circumstances, the question before the habeas court is "whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th

Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance claims:

> [D]efendant's claim that his trial counsel was ineffective for failing to object to the
> prosecutor's argument fails because any objection would have been meritless.
> *People v. Thomas*, 678 N.W.2d 631, 636-37 (2004).
>
> *   *   *
>
> [D]efendant's argument that his trial counsel was ineffective for failing to object [to
> the prosecutor's appeal to the jury's sympathy] also fails. *Thomas*, 678 N.W.2d at
> 636-37 .

*Young*, 2012 WL 3055257 at *3,4 (parallel citations omitted).  As the Michigan Court of Appeals

recognized, counsel's failure to make a frivolous or meritless motion does not constitute ineffective

assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v.

Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir.

2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).  As set forth above, as a matter

of federal constitutional law, the issues Petitioner claims his counsel failed to raise have no merit.

Based on the Michigan Court of Appeals analysis, the same is true with respect to Petitioner's claims

as a matter of state law.[5]  Accordingly, Petitioner's ineffective assistance claims have no merit.

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails

to present a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of

appealability should be granted.  A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit

Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.

*Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned

assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue

must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529

U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of

---

[5]The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84; *Stumpf*, 722 F.3d at 746 n.6) (quoting *Bradshaw*, 546 U.S. at 76) ("'[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'").

Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:      September 30, 2016            /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE